Lelia P. **LANDRY**, Plaintiff,

v.

**UNITED STATES of America**,
Defendant.

Civ. A. No. 10813.

United States District Court
E. D. Louisiana,
New Orleans Division, Division C.

March 18, 1964.

---

Thomas B. Lemann, John L. Glover, Monroe & Lemann, New Orleans, La., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, George A. Hrdlicka, Stanley F. Krysa, John A. Bailey, Attys., Dept. of Justice, Washington, D. C., Louis C. LaCour, U. S. Atty., Eastern Dist. of La., Gene S. Palmisano, Asst. U. S. Atty., Eastern Dist. of La., New Orleans, La., for defendant.

WEST, District Judge.

This is a suit for refund of income taxes in the amount of $12,928.62, plus interest, alleged by petitioner, Lelia P. Landry, to have been overpaid for the year 1955. The question presented for determination here may be very simply stated thusly: Were certain payments, totaling $23,300, which were received by petitioner taxpayer from her deceased husband's employer, includable in her income for the year 1955 under the provisions of Section 61(a) of the Internal Revenue Code of 1954, as contended by the Government, or were these payments excludable from income as gifts received by the taxpayer under the provisions of Section 102(a) of the Internal Revenue Code of 1954, as contended by the petitioner taxpayer.

Section 61(a) of the 1954 Code provides:

"SEC. 61. GROSS INCOME DEFINED.

"(a) *General Definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

"(1) Compensation for services, including fees, commissions, and similar items; * * *."

Section 102(a) of the 1954 Code provides:

"SEC. 102. GIFTS AND INHERITANCES.

"(a) *General Rule.*—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

After hearing the evidence produced during the trial of this case, and after giving due consideration to the arguments and briefs of counsel, it is concluded by this Court that the $23,300 received by petitioner from her deceased husband's employer was not, in fact, a

gift under the meaning and intendment of the Internal Revenue Law, but instead constituted payments, which, under the law, must be included in her gross income for the year 1955.

The petitioner, Mrs. Landry, is the widow of John T. Landry, who died on November 7, 1954. At the time of his death, Mr. Landry was general manager of a sugar refinery owned and operated by J. Aron & Company, Inc., and was also the operating vice president of that company. He was not a stockholder or director of the company, but he had been manager of the sugar refinery since 1934. Mr. Landry died very suddenly, while at work, on November 7, 1954. At the time of his death, he was earning a salary of $1,400 per month. In addition to his salary, Mr. Landry had, in fact, received a bonus from his employer every year since 1940. For the year 1953, the year preceding his death, he received a bonus of $20,500. This bonus was paid over and above his regular salary. In other words, during that year he received a total compensation of $45,570, including the bonus. For the year 1954, Mr. Landry had received, prior to his death on November 7, 1954, a total of $14,000, representing ten months' salary of $1,400 per month.

As a general rule, the Board of Directors of J. Aron & Company, Inc. set the amount of bonus to be paid to its employees during its December meeting each year. The year 1954 was no exception. The Board of Directors met on December 13, 1954, and during its meeting it considered the matter of the year-end bonuses to be paid to its employees. The minutes of the Board of Directors' meeting show that in fixing the amount of bonuses to be paid, consideration was given to "accomplishment of a satisfactory volume of business handled despite highly unusual market conditions, to the financial results for the year, and to the strain and responsibility placed on the executives of the company." Pursuant to this resolution the Board of Directors authorized bonuses for the year 1954 to be paid to all or practically all of the employees, in a total amount of over $309,000. Included in this amount was a bonus to be paid to the widow of Mr. Landry, in the sum of $20,500, and in addition thereto, the widow of Mr. Landry was to receive the remainder of the salary that Mr. Landry would have earned had he lived until the end of the year, or the sum of $2,800, representing his $1,400 salary for November and December, 1954. Pursuant to this decision of the Board of Directors, a letter was directed to Mrs. J. T. Landry by Mr. William B. Burkenroad, Jr., a Director of J. Aron & Company, Inc., which stated:

"In line with my recent telephone conversation with you, enclosed you will find a check for $2,800.00 for services rendered through 1954, also one for $20,500.00, representing the usual bonus. We are pleased that we have been able to arrange these checks as per above, and as expressed to you, it has given all of us great pleasure in granting such recognition in behalf of J. T. for his long years of splendid service and untiring efforts in the interest of our Company.

"Again good wishes for 1955.

"Sincerely yours"

After these payments were made, J. Aron & Company, Inc. claimed an income tax deduction in the sum of $23,300, labeling it as a business expense, and on the books of the corporation, the $20,500 bonus was shown as an expense under the description "Annual Bonus". It was shown on the corporation's income tax return as "Compensation of Officers." The $2,800 payment, representing a continuation of the deceased's salary for November and December, 1954, was shown on the corporation's books under the heading "Salaries and Wages."

There is little doubt of the fact that Mrs. Landry had no legal claim to these payments, and had Mr. Landry lived, as of the date of his death in November, 1954, there is little doubt of the fact that he would have had no legal claim to these payments. However, it is an es-

tablished fact that this company did pay bonuses every year from 1940 through 1954, and the evidence shows that such bonuses have been paid every year since 1954. There is also no question but that the bonus which was paid to petitioner upon the death of her husband was in the same amount as the bonus which he had received the preceding year, and it is in the same amount as the bonus which he would have received, pursuant to the resolution of the Board of Directors of December 13, 1954, had he lived. The evidence in this case establishes quite conclusively that while the amounts paid to the widows of deceased employees varied somewhat, nevertheless there was a general pattern or formula which the company did use in making such payments. As a general rule, when an employee died, leaving a widow and/or family, the survivor was paid the balance of the salary that the deceased employee would have earned during that year had he lived, and in addition thereto, the survivor was paid a bonus based, at least in some respects, upon the bonus which the employee had received the preceding year. For instance, the evidence shows that in one instance where an employee died in July of 1950, his widow was paid the balance of the deceased employee's salary for the year 1950, plus one-half of the 1949 bonus. In another instance, an employee died at the end of October, 1958, and his widow was paid the balance of his salary for the year 1958, plus an amount equal to the bonus which he had received in 1957. Another employee died in July of 1959, and his widow was paid the balance of the salary that he would have earned during the remainder of that year, had he lived, together with a bonus of $35,000. For the preceding year, the employee had received a bonus of $45,000.

Most of the testimony in this case was presented by way of stipulation between counsel. However, Mr. Burkenroad, who is a vice president and director of J. Aron & Company, Inc., did testify in Court. It was his testimony that these payments made to petitioner were "purely gratuitous" and "made out of the goodness of our heart." While Mr. Burkenroad insisted that the payment made to the widow of the deceased employee was not in any way connected with the services rendered to the company by the deceased employee, nevertheless, he did admit that in determining the amount of the payment to be made, consideration was given to the need of the widow; the amount of salary which the deceased employee had been earning; and the amount of bonus that would be paid to the employee had he lived. While Mr. Burkenroad denied that the $20,500 bonus was paid to Mrs. Landry because of the fact that at the time of Mr. Landry's death, he had, for all intents and purposes, already earned the bonus which was to be paid, had he lived, nevertheless, he on the other hand admitted that had Mr. Landry died in February, 1954, rather than in November, 1954, this $20,-500 bonus would not have been paid to Mrs. Landry. This, in spite of the fact that he contended that the bonus was paid solely on account of the need of Mrs. Landry, and in spite of the fact that he further agreed that Mrs. Landry's need would have been no different in February of 1954 than it was in November of 1954. This Court can come to no other conclusion than that the company felt that in accordance with its well established policy, the bonus which was paid to Mrs. Landry had already been earned by Mr. Landry at the time of his death. There is no question whatsoever but that this company had a policy of paying money to the widow of a deceased employee, and that such payment was based upon the salary which the employee was earning, plus the amount of bonus which they felt the employee had earned prior to his death. Even though there was no legal obligation on the part of this company to pay a bonus, nevertheless, the policy of paying a bonus had been so entrenched over the years as to make the expectation of the payment of a bonus as much a part of the income of the employee as his salary. Indeed, the bonuses paid were usually in excess of the amount of salary

received by the employees. Mr. Burkenroad himself stated that the payment made to Mrs. Landry was in accordance with "the formula that we employed in cases of that kind." As further stated by Mr. Burkenroad, while he did not feel that the company was legally obligated to pay a bonus at all, he did, nevertheless, consider it to be a very necessary business expense. He considered the payment of bonuses necessary for the future public and personnel relations of his company. He stated that the payment of these bonuses "creates good will", and that it "maintains terrific personnel relations." He further testified that such payment inured to the benefit of the company because "many of our customers know that that is a policy of the company," and that it was his belief that many customers would give a preference to their company because of this policy.

While Mr. Burkenroad insisted that these payments were made purely and simply "out of the goodness of our hearts", and that they were based solely and entirely on the need of the widow, in his other testimony he admitted that no investigation of any kind was made into the actual need of Mrs. Landry, and the record does show that Mrs. Landry, at the time of the death of her husband, had considerable income aside from the income of her husband's salary.

In Commissioner of Internal Revenue v. Duberstein, et al., 363 U.S. 278, 80 S. Ct. 1190, 4 L.Ed.2d 1218 (1960), the Government suggested that the United States Supreme Court promulgate a test to serve as a standard to be applied by the lower courts in dealing with cases involving the question of whether or not payments such as this constituted income or a gift. The Supreme Court rejected this invitation to do so. Instead, it stated that these are basically questions for determination on a case by case basis. The Supreme Court stated in that case that whether a transfer amounts to a gift or not is a question that must be reached on a consideration of all of the factors. In Duberstein, the Court laid down these guidelines:

"This Court has indicated that a voluntarily executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a 'gift' within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730, 49 S.Ct. 499, 504, 73 L.Ed. 918. And, importantly, if the payment proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41, 58 S.Ct. 61, 65, 82 L.Ed. 32, it is not a gift. And, conversely, '[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.' Robertson v. United States, 343 U.S. 711, 714, 72 S.Ct. 994, 996, 96 L.Ed. 1237. A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity,' Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 246, 76 S.Ct. 800, 803, 100 L.Ed. 1142; 'out of affection, respect, admiration, charity or like impulses.' Robertson v. United States, supra, 343 U.S. at page 714, 72 S.Ct. at page 996. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's 'intention'. * * * there must be an objective inquiry as to whether what is called a gift amounts to it in reality."

Applying these criteria to the present case, the Court finds facts not unlike those in Gaugler v. United States, 312 F.2d 681 (CA 2 1963) wherein the Court found that payments by an employer to the widow of a deceased employee did not constitute a gift, but instead constituted

taxable income. The facts in Gaugler are so closely akin to those in the present case as to be practically on all fours therewith. While there was certainly no legal obligation on the part of J. Aron & Company, Inc. to make these payments to petitioner, nevertheless, this Court is convinced, beyond any question of doubt, that these payments to Mrs. Landry, under the circumstances, proceeded "primarily from the constraining force of (a) moral * * * duty" and from "the incentive of anticipated benefit of an economic nature" to the employer, J. Aron & Company, Inc. The Court is likewise of the opinion that this payment to Mrs. Landry did not proceed from "a detached and disinterested generosity" or "out of affection, respect, admiration, charity or like impulses," and nothing else. The testimony in this case convinces me that this Company, while certainly having concern and feeling for the widow of a deceased executive of the company, nevertheless felt that the money paid had, for all intents and purposes, been earned by Mr. Landry prior to his death, and that, in view of the long established policy of this company, they had a moral obligation or duty to pay this money to Mr. Landry, had he lived, or to his widow, in the event of his death. Mr. Burkenroad points to the fact that where an employee of the company died, leaving no family or no widow, that no such payment was made to his other heirs. This is wholly and completely understandable. It happens to have been the policy of the company over the many years not to make such payments to the heirs of a deceased employee who left no widow or children. Thus, in such an instance, in view of the long established policy of the company, the Board of Directors felt no moral obligation to make such payment. This, of course, merely bears out the fact that such survivors or heirs had no "legal right" to these death benefits. But this in no way lessens the moral obligation that was apparently felt by this company toward the widow and children of a deceased employee. It furthermore in no way lessens the eco-nomic benefit to be derived by the company as a result of the good will created by such a policy. This holding in no way conflicts with the recent decision in the case of United States v. Pixton, 326 F.2d 626 (CA 5 1964). Indeed, it is entirely compatible with it.

Under the particular facts of this case, as applied to the holding in Duberstein, and in line with the holding in Gaugler v. United States, supra, this Court comes to the inescapable conclusion that this payment to petitioner was not a gift within the meaning of the provisions of the Internal Revenue Code, but was instead a payment which must be included in petitioner's gross income for the year involved. Judgment will be entered accordingly.